UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

**GEORGIA GAMING INVESTMENT,**
**LLC, a Georgia limited liability company,**

        **Plaintiff,**

        **v.**

**CHICAGO TITLE AND TRUST**
**COMPANY, an Illinois corporation,**

        **Defendant.**

**JURY TRIAL DEMANDED**

## COMPLAINT

Plaintiff Georgia Gaming Investment LLC ("Georgia Gaming") by its attorney Kevin McJessy, McJessy Ching & Thompson LLC, complains of Chicago Title and Trust Company ("Chicago Title") as follows:

### SUMMARY OF CLAIM

1.     Georgia Gaming funded an escrow account with Chicago Title in the amount of $1.5 million to fund the potential acquisition of Fitzgerald's Tunica Casino and Hotel in Tunica, Mississippi ("Casino") by Porter Casino Resorts, Inc. ("Porter Resorts") from The Majestic Star Casino LLC ("Majestic"). At the time the escrow was funded, Georgia Gaming's attorney advised Chicago Title that Georgia Gaming, not Porter Resorts, was funding the $1.5 million escrow account. Georgia Gaming then transferred $1.5 million to the escrow account established by Chicago Title.

2.     When Porter Resorts and Majestic failed to reach an agreement to close on the acquisition of the Casino, Georgia Gaming issued a notice to Chicago Title to return Georgia Gaming's $1.5 million or to not release its $1.5 million to any other party. Instead, however,

Chicago Title disbursed Georgia Gaming's $1.5 million to Porter Resorts. Georgia Gaming is seeking damages of $1.5 million from Chicago Title because Chicago Title breached its obligations to Georgia Gaming under the terms of the escrow agreement or, alternatively, because Chicago Title breached its obligations to Georgia Gaming as a third-party beneficiary to the escrow agreement.

## THE PARTIES

3.      Georgia Gaming is a Georgia limited liability company with its principal place of business located at 5675 Jimmy Carter Boulevard, Suite 10, Norcross, Georgia 30071.

4.      Chicago Title is a corporation organized and existing under the laws of the State of Illinois with its principal place of business located in Chicago, Illinois.

## JURISDICTION

5.      This Court has jurisdiction under 28 U.S.C. § 1332(a)(1) because the amount in controversy exceeds $75,000 excluding interest and costs, and there is complete diversity of citizenship between Georgia Gaming and Chicago Title.

## VENUE

6.      Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b)(1) and (c) because Chicago Title is located in Illinois and within the jurisdiction of this judicial district.

## GENERAL ALLEGATIONS

7.      In approximately 2017, Porter Resorts negotiated to purchase the Casino from Majestic.

8.      Porter Resorts approached members and representatives of Georgia Gaming to solicit investments in Porter Resorts in exchange for Porter Resorts' stock and other interests.

9.     As part of the negotiations between Porter Resorts and Majestic, Porter Resorts was required to fund an escrow account with Chicago Title in the amount of $1.5 million representing earnest money for the acquisition of the Casino.

10.     On or about September 8, 2017, an escrow agreement titled "Strict Joint Order Escrow Instructions" ("Escrow Agreement") was prepared between Porter Resorts, Majestic, and Chicago Title.  A copy of the Escrow Agreement is attached as Exhibit A.

11.     Porter Resorts was unable to fund the escrow account.

12.     Georgia Gaming agreed to provide the $1.5 million to fund the escrow account.

13.     On or about September 14, 2017, Georgia Gaming's attorney advised Chicago Title that Georgia Gaming would fund the escrow account, not Porter Resorts, thereby making Georgia Gaming the owner of the escrowed funds until the acquisition of the Casino closed.

14.     On or about September 14, 2017, Georgia Gaming's attorney informed Chicago Title that "I am instructed to wire funds to Chicago Title on behalf of my client, and wished to get verbal confirmation of the account… If you could please call me in the morning at my direct line, we can get the funds transferred."

15.     The next day, Chicago Title's representative contacted Georgia Gaming's attorney and advised that Chicago Title was ready for Georgia Gaming to transfer the funds into the escrow account; and, Georgia Gaming's attorney responded, "I am available at my direct line number below and ready to send the funds."

16.     Georgia Gaming's attorney and Chicago Title's representative then had a telephone conversation in which Georgia Gaming's attorney advised Chicago Title that the escrow account was going to be funded by Georgia Gaming; so, Chicago Title was expressly informed that the escrow account was being funded by Georgia Gaming, not by Porter Resorts.

17.     Georgia Gaming's attorney arranged for Georgia Gaming's funds to be transferred into the escrow account with Chicago Title, which was done on September 15, 2017.  Thereafter, Chicago Title confirmed to Georgia Gaming's attorney that "we are in receipt of the wire transfer for $1,500,000."

18.     That same day, Georgia Gaming's attorney also gave notice to Porter Resorts' attorney that Georgia Gaming had funded the $1.5 million escrow account and that Georgia Gaming's attorney had confirmed with Chicago Title that Georgia Gaming was in fact funding the $1.5 million escrow account.  A copy of Georgia Gaming's attorney's September 15, 2017 notice to Porter Resorts' attorney is attached as Exhibit B.

19.     At the time of the wire transfer, Chicago Title had actual knowledge that Georgia Gaming was funding the escrow account and that Porter Resorts was not.

20.     Although the original escrow agreement was between Porter Resorts, Majestic, and Chicago Title, as of September 14, 2017 Chicago Title knew that Georgia Gaming had funded the escrow account, not Porter Resorts, and that Georgia Gaming was the true party interest to the escrow agreement, not Porter Resorts.

21.     Chicago Title was holding the funds on behalf of Georgia Gaming until the transaction closed.

22.     The escrow deposit was fully refundable prior to the execution of a formal binding purchase agreement between Porter Resorts and Majestic Star.  Because no formal binding purchase agreement was ever executed, the escrow deposit was fully refundable.

23.     When it became apparent to Georgia Gaming that the transaction would not close, Georgia Gaming's attorney gave notice to Chicago Title that it was demanding the return of Georgia Gaming's $1.5 million held by Chicago Title in the escrow account.

24.     Georgia Gaming's attorney provided written notice to Chicago Title on February 9, 2018, reminding Chicago Title that Georgia Gaming had funded the escrow account and, therefore, Georgia Gaming was entitled to the return of the escrow funds under the terms of the Escrow Agreement.

25.     Consistent with the terms of the Escrow Agreement, Georgia Gaming's attorney also gave Chicago Title notice that Georgia Gaming objected to its $1.5 million deposit being disbursed to any other party.

26.     Georgia Gaming's attorney's February 9, 2018 notice to Chicago Title expressly stated:

> …please consider this letter as notice of my Client's claim to the $1,500,000.00 (the "Escrow Funds") currently being held by Chicago Title as Escrow Agent pursuant to the Escrow Instructions in connection with the proposed acquisition of the Casino from Majestic by Porter…
>
> …my Client's former counsel wired the Escrow Funds to Chicago Title on behalf of my Client on September 15, 2017…
>
> The purpose of this letter is to notify Chicago Title of my Client's claim to the Escrow Funds and to further demand that said funds be immediately refunded and wired to my escrow account for the benefit of my Client. A copy of the wiring instructions for my escrow account are provided with this letter as Exhibit "B".
>
> By copy of this letter, I am notifying both Majestic and Porter, by and through their respective counsel, of my Client's claim and demand for refund.

A copy of the February 9th Notice is attached as Exhibit C.

27.     Georgia Gaming thereafter learned that despite Chicago Title having actual knowledge that Georgia Gaming had funded the $1.5 million Escrow Agreement, that Georgia Gaming was the owner of the $1.5 million, that Georgia Gaming was therefore the legal successor-in-interest to Porter Resorts under the Escrow Agreement, and that Georgia Gaming objected to

any disbursement of its $1.5 million to any party other than itself, Chicago Title had disbursed the $1.5 million to Porter Resorts on or about February 20, 2018.

## COUNT I

28.     Georgia Gaming incorporates paragraphs 1 through 27 above as though fully set forth here.

29.      Nothing in the Escrow Agreement precluded Porter Resorts from transferring its rights under the Escrow Agreement to Georgia Gaming.

30.     Nothing in the Escrow Agreement precluded Georgia Gaming from acquiring Porter Resorts' rights under the Escrow Agreement.

31.     The Escrow Agreement was fully assignable and transferrable by an express or implied agreement.

32.     Based upon the parties' conduct and the express verbal and written statements between the parties, Chicago Title knew that Porter Resorts had transferred and that Georgia Gaming had acquired Porter Resorts' rights under the terms of the Escrow Agreement.

33.     Georgia Gaming was a party to the Escrow Agreement.

34.     Georgia Gaming gave Chicago Title notice that Georgia Gaming objected to Chicago Title's transfer of Georgia Gaming's $1.5 million to Porter Resorts prior to the date that Chicago Title transferred Georgia Gaming's $1.5 million to Porter Resorts.

35.     The escrow agreement states that Georgia Gaming's $1.5 million can be transferred "only upon receipt of a joint order of the undersigned *or their respective* legal representatives *or assigns*" [and] "I no case shall the Deposit be surrendered except upon an order signed by the parties hereto, their respective legal representatives *or assigns*…." (Emphasis added.)

6

36.     Chicago Title transferred Georgia Gaming's $1.5 million to Porter Resorts with full knowledge of Georgia Gaming's objections.

37.     Chicago Title transferred Georgia Gaming's $1.5 million to Porter Resorts in breach of Georgia Gaming's instructions to return Georgia Gaming's $1.5 million.

38.     Chicago Title transferred Georgia Gaming's $1.5 million to Porter Resorts in breach of Georgia Gaming's instructions not to transfer Georgia Gaming's $1.5 million to any other party.

39.     Chicago Title's conduct was a breach of the Escrow Agreement.

40.     As a direct and proximate result of Chicago Title's conduct, Georgia Gaming has suffered damages in excess of $1.5 million.

41.     Georgia Gaming fully complied with its obligations so as to be entitled to performance by Chicago Title.

WHEREFORE, Georgia Gaming Investment, LLC prays that this Court enter judgment as follows:

A.     judgment in favor of Georgia Gaming Investment LLC and against Chicago Title and Trust Company in an amount not less than $1,500,000.00, together with pre-judgment interest as permitted by law; and

B.     for such other and further relief to which Georgia Gaming Investment LLC might be entitled.

## **COUNT II**

42.     Georgia Gaming incorporates paragraphs 1 through 27 above as though fully set forth here.

43.     In the alternative, Georgia Gaming was a third party beneficiary of the Escrow Agreement which was entered into for Georgia Gaming's benefit and for the preservation of Georgia Gaming's $1.5 million.

44.     Chicago Title had full knowledge that Georgia Gaming was a third party beneficiary under the Escrow Agreement pursuant to which Chicago Title was holding Georgia Gaming's $1.5 million.

45.     Georgia Gaming gave Chicago Title notice that Georgia Gaming objected to Chicago Title's transfer of Georgia Gaming's $1.5 million to Porter Resorts prior to the date that Chicago Title transferred Georgia Gaming's $1.5 million to Porter Resorts.

46.     Chicago Title transferred Georgia Gaming's $1.5 million to Porter Resorts with full knowledge of Georgia Gaming's objections.

47.     Chicago Title transferred Georgia Gaming's $1.5 million to Porter Resorts in breach of Georgia Gaming's instructions to return Georgia Gaming's $1.5 million.

48.     Chicago Title transferred Georgia Gaming's $1.5 million to Porter Resorts in breach of Georgia Gaming's instructions not to transfer Georgia Gaming's $1.5 million to any other party.

49.     Chicago Title's conduct was a breach of Georgia Gaming's third party rights under the terms of the Escrow Agreement.

50.     As a direct and proximate result of Chicago Title's conduct, Georgia Gaming has suffered damages in excess of $1.5 million.

51.     Georgia Gaming fully complied with its obligations so as to be entitled to performance by Chicago Title.

52.     Chicago Title's breach of Georgia Gaming's third party rights under the Escrow Agreement has directly and proximately caused damages to Georgia Gaming in the amount of $1.5 million.

WHEREFORE, Georgia Gaming Investment, LLC prays that this Court enter judgment as follows:

A.      judgment in favor of Georgia Gaming Investment LLC and against Chicago Title and Trust Company in an amount not less than $1,500,000.00, together with pre-judgment interest as permitted by law; and

B.      for such other and further relief to which Georgia Gaming Investment LLC might be entitled.

**JURY TRIAL DEMANDED**

Respectfully submitted,

GEORGIA GAMING INVESTMENT, LLC

By:____/s/ Kevin P. McJessy_____
          One of Its Attorneys

Kevin P. McJessy
MCJESSY, CHING & THOMPSON, LLC
3759 N. Ravenswood, Ste. 231
Chicago, Illinois  60613
(773) 880-1260
mcjessy@mcandt.com

## STRICT JOINT ORDER ESCROW TRUST INSTRUCTIONS

ESCROW   TRUST                          DATE:   September 8, 2017
NO.:

TO:     Chicago Title and Trust Company, Escrow Trustee
        10 South LaSalle Street – Suite 3100
        Chicago, IL 60603
        Attention:   Andres R. Bardelas, Escrow Administration Manager
        E-Mail:    andres.bardelas@ctt.com

**Customer Identification**

Seller:                          The Majestic Star Casino, LLC

Purchaser:                       The Porter Casino Resort, Inc.

Property:                        Fitzgeralds Tunica Casino and Hotel, Tunica,
                                 Mississippi

Approximate   Disbursement   October 31, 2017
Date:

**Deposits**

The sum of One Million Five Hundred Thousand and No/100 Dollars
($1,500,000.00) (the "Deposit") representing earnest money.

**Delivery of Deposits**

The Deposit is deposited with the escrow trustee to be delivered by it only upon the
receipt of a joint order of the undersigned or their respective legal representatives
or assigns.

In no case shall the Deposit be surrendered except upon the receipt of an order
signed by the parties hereto, their respective legal representatives or assigns, or in
obedience to the court order described below.  All deposits shall be disbursed
strictly in accordance with this paragraph and shall require the signature of the
undersigned parties to this escrow.

**Billing Instructions**

Any escrow trust fee will be shared equally by Purchaser and Seller.

Escrow trust fee shall be waived if closing occurs at Chicago Title Insurance
Company.



**PLEASE NOTE:** The escrow trust fee for these joint order escrow trust instructions is due and payable on the disbursement date (which may be amended by joint written direction of the parties hereto). In the event no projected disbursement date is ascertainable, said escrow trust fee is to be billed at acceptance and is due and payable within thirty (30) days from the billing date. Chicago Title and Trust Company will waive the escrow trust fee for these joint order escrow trust instructions in the event the funds on deposit herein are transferred to or disbursed in connection with sale escrow trust instructions or an agency closing transaction established at Chicago Title Insurance Company.

**Investment**

Deposits made pursuant to these instructions may be invested on behalf of any party or parties hereto: Provided, that any direction to escrow trustee for such investment shall be expressed in writing and contain the consent of all other parties to this escrow, and also provided that you are in receipt of the taxpayer's identification number and investment forms as required. Escrow trustee will, upon request, furnish information concerning its procedures and fee schedules for investment.

Except as to Deposits of funds for which escrow trustee has received express written direction concerning investment or other handling, the parties hereto agree that the escrow trustee shall be under no duty to invest or reinvest any Deposits at any time held by it hereunder; and, further, that escrow trustee may commingle such Deposits with other Deposits or with its own funds in the manner provided for the administration of funds under Section 2-8 of the Corporate Fiduciary Act (205 ILCS 620/2-8) and may use any part or all such funds for its own benefit without obligation of any party for interest or earnings derived thereby, if any. Provided, however, nothing herein shall diminish escrow trustee's obligation to apply the full amount of the Deposits in accordance with the terms of these escrow trust instructions.

In the event the escrow trustee is requested to invest Deposits hereunder, Chicago Title and Trust Company is not to be held responsible for any loss of principal or interest which may be incurred as a result of making the investments or redeeming said investment for the purposes of these escrow trust instructions.

**Compliance with Court Order**

The undersigned authorize and direct the escrow trustee to disregard any and all notices, warnings or demands given or made by the undersigned (other than jointly) or by any other person. The said undersigned also hereby authorize and direct the escrow trustee to accept, comply with, and obey any and all writs, orders, judgments or decrees entered or issued by any court with or without jurisdiction; and in case the said escrow trustee obeys or complies with any such writ, order, judgment or decree of any court, it shall not be liable to any of the parties hereto or any other person, by reason of such compliance, notwithstanding any such writ, order, judgment or decree be entered without jurisdiction or be subsequently reversed, modified, annulled, set aside or vacated. In case the escrow trustee is made a party defendant to any suit or proceedings regarding this escrow trust, the undersigned, for themselves, their heirs, personal representatives, successors, and assigns, jointly and severally, agree to pay to said escrow trustee, upon written demand, all costs, attorney's fees, and expenses incurred with respect thereto. The escrow trustee shall have a lien on the Deposit(s) herein for any and all such costs, fees, and expenses. If said costs, fees, and expenses are not paid, then the escrow trustee shall have the right to reimburse itself out of the said Deposit(s).

3

## Execution

These escrow trust instructions are governed by and are to be construed under the laws of the State of Illinois. The escrow trust instructions, amendments or supplemental instructions hereto, may be executed in counterparts, each of which shall be deemed an original and all such counterparts together shall constitute one and the same instrument.

FOR PURCHASER:                                      FOR SELLER:

M. Cole Porter, C.E.O.                              Taft Stettinius & Hollister LLP
815 E. E.H. Crump Blvd.                             111 East Wacker Drive – Suite 2800
Memphis, TN 38126                                   Chicago, IL 60601
E-Mail:                                             Attention:   Paul L. Kelley, Esq.
cole@theportercaxinoresort.com                      E-Mail:      pkelley@taftlaw.com


Signature                                           Signature


ACCEPTED:

CHICAGO TITLE AND TRUST
COMPANY, as Escrow Agent


By:

Name:

Title:

21216994.2

Navneet S. Chugh*+
Sherwood Tung*+
Kirti Kalra*+
Melissa Chan*+
Navdeep Meamber*+
Diya A. Mathews*†¤
Vandana P. Marath¤
Lihua Tan*†
Brinda Gandhi+
Jaymen Chavda△
Gladys Gervacio+
Yeon Me Kim~∞
Mohammad Khan+
Prema Roddam†
Krishnakala Busani ¤

Jalpa Shah+
Earth Shah+
Shafiqa Kureshi+
Vijay Yellareddigari△^∞
Kritika Bharadwaj†
Gurshaan Chattha+
Rubeena Sachdev+
Mishita Jethi†
Chetana Kaasam†
Sismi Raju Menachery†
Bhakti Shivarekar+†
Nishita Patel+
Rohini S. Vora+
Joy Dungca†¤

* Partners
+Admitted in California
△Admitted in Georgia
¤Practice limited to
Immigration Law
†Admitted in New York

~Admitted in Virginia
^Admitted in New Jersey
¤ Admitted in Illinois
∞Admitted in Washington DC
□Admitted in Pennsylvania
◊Admitted in Connecticut



## CHUGH, LLP

**CERRITOS ● SANTA CLARA ● EDISON ● ATLANTA ● RESTON**
INDIA AFFILIATE OFFICES
**BANGALORE ● CHENNAI ● NEW DELHI ● MUMBAI ●
CHANDIGARH● AHMEDABAD**

September 15, 2017

**VIA ELECTRONIC MAIL**

Thomas F. Fricke
tffricke@aol.com

  **Re: Acknowledgement of Transfer**

Dear Mr. Fricke:

  The undersigned attorney and firm hereby acknowledge the transfer of One Million Five Hundred Thousand Dollars ($1,500,000.00), allocated as the Deposit relating to The Majestic Star Casino, LLC acquisition. The funds were transferred as follows:

| | |
|---|---|
| Bank Name: | Bank of America, N.A. |
| ABA Number: | ███████ |
| Account Name: | Chicago Title and Trust Company Loop |
| Account Number: | ██████ |
| Escrow Number: | ███████ |

Prior to initiating the wire, I had a telephone call with Andres Bardelas, to obtain verbal confirmation of the above wire details. The approval code for the transfer is ██████████.

  Thank you for your attention to this matter.

       Sincerely,

       Jaymen J. Chavda, Esq.
       Attorney for Georgia Gaming Investment, LLC



EXHIBIT
B

1

undefined
undefined



Clifton M. Patty, Jr. †
email: skippattylawfirm@gmail.com

C. Chad Young ††
email: chadyoung@pattylaw.com

Christopher M. Harris ††
email: chrisharris@pattylaw.com

Marissa C. Krogh †
email: marissacoffey@pattylaw.com

February 9, 2018

**VIA E-MAIL andres.bardelas@ctt.com**
**AND FEDERAL EXPRESS**
Chicago Title and Trust Company,
Escrow Trustee
10 South LaSalle Street
Suite 3100
Chicago, IL 60603

Attn: Andres R. Bardelas, Escrow Administration Manager

RE:  **Escrow Trust No.:** ▮▮▮▮▮▮▮▮
     **Seller:**          **The Majestic Star Casino, LLC ("Majestic")**
     **Purchaser:**       **The Porter Casino Resort, Inc. ("Porter")**
     **Investor:**        **Georgia Gaming Investment, LLC ("Investor")**
     **Property:**        **Fitzgeralds Tunica Casino and Hotel, Tunica, Mississippi (the "Casino")**
     **Escrow Agreement:** **Strict Joint Order Escrow Trust Instructions dated September 8, 2017 (the "Escrow Instructions")**

Dear Mr. Bardelas:

This Office represents the Investor in connection with the above referenced matter. On behalf of the Investor, please consider this letter as notice of my Client's claim to the $1,500,000.00 (the "Escrow Funds") currently being held by Chicago Title as Escrow Agent pursuant to the Escrow Instructions in connection with the proposed acquisition of the Casino from Majestic by Porter.

The Escrow Funds were provided by the Client for the use and benefit of Porter pursuant to a written Letter of Intent and other binding documents dated August 29, 2017 (the "Investment Documents"). The Investment Documents specifically set forth specific conditions governing my Client's investment obligation, including the portion of my Client's investment utilized for the Escrow Funds. These conditions include, but are not limited to the condition that the Escrow Funds are to be utilized to fund the specific transaction between Majestic and Porter to acquire the Casino according to the specific terms of binding contractual documents that were in effect as of the date of the Escrow Instructions. Pursuant to the specific conditions of the Investment Documents, my Client's former counsel wired the Escrow Funds to Chicago Title on behalf of my Client on September 15, 2017, and provided confirmation of the same to Porter. A copy of the

7731 Nashville Street • P.O. Box 727 • Ringgold, GA 30736
Telephone: 706.935.9100 • Fax 706.935.6022

*Licensed in Georgia and Tennessee ††    Licensed in Georgia Only †*



EXHIBIT
**C**

Andres R. Bardelas, Escrow Administration Manager
Chicago Title and Trust Company, Escrow Trustee
February 9, 2018
Page Two

confirmation letter from my Client's former counsel to counsel for Porter dated September 15, 2017, is attached to this correspondence as Exhibit "A".

The specific conditions outlined in the Investment Documents which are required for my Client's investment and which are required for my Client to provide the Escrow Funds have not been met. In addition, the contract documents between Majestic and Porter under which the Escrow Funds were provided and were deposited have lapsed and expired and there is currently no binding written contractual agreement between Majestic and Porter for the acquisition of the Casino. Therefore, my Client has previously made a request to Porter that the Escrow Funds which represent a portion of its investment be refunded. It is my understanding that Majestic has in fact offered to consent to the refund of the Escrow Funds as requested by my Client but Porter has refused this offer.

The purpose of this letter is to notify Chicago Title of my Client's claim to the Escrow Funds and to further demand that said funds be immediately refunded and wired to my escrow account for the benefit of my Client. A copy of the wiring instructions for my escrow account are provided with this letter as Exhibit "B".

By copy of this letter, I am notifying both Majestic and Porter, by and through their respective counsel, of my Client's claim and demand for refund.

I look forward to hearing from you in regard to the above and please do not hesitate to contact me should you have any questions regarding the same.

Sincerely,

C. Chad Young

CCY/kdb

cc:     Sandip Patel (via e-mail only)
        Harshad Patel (via e-mail only)
        Thomas F. Fricke, Esquire (via e-mail only)
        Paul L. Kelley, Esquire (via e-mail only)
        Rodney W. Phillipe, Esquire (via e-mail only)

Navneet S. Chugh*+
Sherwood Tung*+
Kirti Kalra*+
Melissa Chan*+
Navdeep Meamber*+
Diya A. Mathews*†◦
Vandana P. Marath◊◦
Lihua Tan*†
Brinda Gandhi+
Jaymen Chavda△
Gladys Gervacio+
Yeon Me Kim~∞
Mohammad Khan+
Prema Roddam†
Krishnakala Busani ⌶

* Partners
+Admitted in California
△Admitted in Georgia
◦Practice limited to
Immigration Law
†Admitted in New York



**CHUGH, LLP**

**CERRITOS ● SANTA CLARA ● EDISON ● ATLANTA ● RESTON**
INDIA AFFILIATE OFFICES
**BANGALORE ● CHENNAI ● NEW DELHI ● MUMBAI ●**
**CHANDIGARH● AHMEDABAD**

Jalpa Shah+
Earth Shah+
Shafiqa Kureshi+
Vijay Yellareddigari◠∞
Kritika Bharadwaj†
Gurshaan Chattha+
Rubeena Sachdev+
Mishita Jethi†
Chetana Kaasam†
Sismi Raju Menachery†
Bhakti Shivarekar+†
Nishita Patel+
Rohini S. Vora+
Joy Dungca†◦

~Admitted in Virginia
◠Admitted in New Jersey
⌶Admitted in Illinois
∞Admitted in Washington DC
□Admitted in Pennsylvania
◊Admitted in Connecticut

September 15, 2017

**VIA ELECTRONIC MAIL**

Thomas F. Fricke
tffricke@aol.com

  **Re: Acknowledgement of Transfer**

Dear Mr. Fricke:

  The undersigned attorney and firm hereby acknowledge the transfer of One Million Five Hundred Thousand Dollars ($1,500,000.00), allocated as the Deposit relating to The Majestic Star Casino, LLC acquisition. The funds were transferred as follows:

    Bank Name:  Bank of America, N.A.
    ABA Number:  ███
    Account Name: Chicago Title and Trust Company Loop
    Account Number: ███
    Escrow Number: ███

Prior to initiating the wire, I had a telephone call with Andres Bardelas, to obtain verbal confirmation of the above wire details. The approval code for the transfer is ███.

  Thank you for your attention to this matter.

       Sincerely,

       Jaymen J. Chavda, Esq.
       Attorney for Georgia Gaming Investment, LLC

1

**Clifton M. Patty, Jr.**
**P.O. BOX 727**
**RINGGOLD, GA 30736**
**706-935-9100**
**706-935-6022 FACSIMILE**

WIRING INSTRUCTIONS FOR:          Clifton M. Patty, Jr.
                                  Attorney at Law – Trust Account
                                  P.O. Box 727
                                  Ringgold, GA 30736

BANK NAME:                        FirstBank
                                  P.O. Box 789
                                  Ringgold, GA 30736

ROUTING NUMBER:

SHORT NAME:                       FirstBank

ACCOUNT NUMBER:

ACCOUNT NAME:                     Clifton M. Patty, Jr.

EMAIL INFORMATION:                chadyoung@pattylaw.com

Exhibit "B"